UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| B.M., by her Next Friend Her Mother S.M. | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5:07-153-JMH |
| v. | ) ) ) | |
| BOARD OF EDUCATION OF SCOTT COUNTY, KENTUCKY; and DALLAS BLANKENSHIP, Superintendent, Officially, | ) ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) ) | |

**        **        **        **        **

This matter is before the Court on the Motion for Summary
Judgment of defendants Board of Education of Scott County,
Kentucky, and Dallas Blankenship ("Blankenship"), in his official
capacity as the Superintendent of the Scott County Schools,
(hereinafter collectively referred to as the "School District")
[Record No. 20]. Plaintiff, B.M., by her next friend, S.M., has
filed a Response in opposition to the motion [Record No. 25], and
Defendants have replied [Record No. 28]. This matter is now ripe
for review.

**I.   FACTUAL BACKGROUND**

At the time of the events from which the complaint arises, B.M
was a 9 year old student at Stamping Ground Elementary School
("SGES"). On or about March 7, 2007, B.M. was hospitalized. She
was released from the hospital on March 8, 2007. While

hospitalized, B.M. was diagnosed with Type I diabetes. As a result, it is undisputed that B.M. was required to have at least one insulin injection during the school day. Due to her age, B.M. was not able to administer her own insulin injections. On March 8, 2007, B.M.'s mother, S.M., notified personnel at SGES of B.M.'s diagnosis. During that discussion, S.M. spoke with Sharon Clark, who identified herself as the school nurse. S.M. advised Ms. Clark that B.M would need injections at school. S.M. then asked to speak to the school principal, Mr. Paul Krueger. S.M. was advised by Mr. Krueger that SGES did not have a school nurse and the current staff would not be able to administer injections. Mr. Krueger stated that he would do some research he would get back with S.M. about how SGES could remedy the situation.

On March 9, 2007, Mr. Krueger telephoned S.M. and related that he had spoken to Valerie Sewell, the School District's Director of Student Services. Mr. Krueger went on to say that because SGES did not have a school nurse, B.M. would have to be transferred to Western Elementary School ("WES"), which did have a nurse at the school, in order to accommodate S.M.'s request. S.M. explained to Mr. Krueger that B.M. rode the bus to school and that S.M. could not provide B.M. with transportation to WES. S.M. then inquired as to how B.M would be transported to WES. Mr. Krueger stated that he was unsure and that he would have to get back to her. S.M. later spoke to Mr. Krueger, and he informed her that the School District

2

would provide transportation.  Mr. Krueger explained that, because
there was not a bus that would ordinarily pick children up and
deliver them to WES, B.M. would need to ride the bus to SGES in the
morning, and she would then be transported to WES.  The process
would be reversed in the afternoon.  S.M. subsequently contacted
Ms. Sewell to state her objection to this transportation plan.
S.M. found it unacceptable that under this plan, B.M. would arrive
at school late every morning and leave from school early every
afternoon, losing educational time.  According to S.M., Ms. Sewell
informed S.M. that she had no choice  –  it was this plan or
nothing.

    S.M. spoke with various School District personnel concerning
options on how to address B.M.'s need for insulin injections while
allowing her to remain at SGES, including Human Resources Director
Randy Napier, Superintendent Dallas Blankenship, and Nurses Jamie
Whitehead and Joyce Ellis, both employed by the Scott County Board
of Education.[1]   The alternative suggestions ultimately offered by
the School District included: offering to take B.M. from SGES to a
local doctor's office during the school day; having emergency

---

[1]    Additionally, during a meeting concerning the
situation, S.M. was informed by Superintendent Dallas Blankenship
that no personnel would be available to work on accommodations
for B.M. while Scott County was playing in the Kentucky High
School Boys Sweet Sixteen Basketball Tournament, although there
is no evidence to support the fact that B.M.'s needs were not
accommodated during that time, and compared B.M.'s diabetic
condition and need for insulin to his pet dog's need for insulin.

medical technicians from the nearby Scott County Fire Station come administer shots; allowing B.M. to administer her own shots; having S.M. come to school after B.M.'s lunch to administer injections; and having a local nurse, a local physician, and S.M. all share the responsibility of coming to school to administer the injections.  Each of these ideas were rejected by S.M. as being unsatisfactory for a variety of reasons. S.M. again suggested that the school district employ a nurse at SGES or that they train an existing staff member to administer B.M.'s insulin shots.  The school declined to hire another nurse to be resident at SGES and rejected the idea of a staff member administering the insulin because of concerns about legal liability which could result from having a non-nurse administer injections.[2]  Thus, the School District found S.M.'s suggestions to be unreasonable.

The impasse continued through the end of May 2007, the remainder of the 2006-2007 school year.  B.M. continued to attend school at SGES during that time, requiring daily insulin injections following lunch and on certain other occasions.  The injections were administered at the school by various individuals, including S.M., a local nurse, a local physician, and B.M.'s grandmother. B.M.'s family has now moved within the school district, and, since the beginning of the 2007-2008 academic year, she has attended

---

[2]     Defendants refer to the Kentucky Board of Nursing's prohibition against training laypersons to administer simple injections.

another school, although not WES, in the Scott County school district. According to the response to the motion at bar, S.M. is satisfied with the plan that has been in place since the beginning of the 2007-2008 academic year. [Record No. 25 at 8.]

Plaintiff's Complaint avers violations of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act (hereinafter, "ADA"), 42 U.S.C. § 12132; the Kentucky Civil Rights Act (hereinafter, "KCRA"), KRS 344.130; and 42 U.S.C. § 1983. For the reasons which follow, the Court finds that B.M. has failed to state a cause of action under any theory, and her claims must fail.

**II. STANDARD OF REVIEW**

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 797 (6th Cir. 2005)(*citing* Fed. R. Civ. 56(c)). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. A fact is material if its resolution will affect the outcome of the lawsuit. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001); *see Pharakhone v. Nissan N. Am.,*

5

*Inc.*, 324 F.3d 405, 407 (6th Cir. 2003) ("If, under the governing law, the outcome would be the same regardless of how a factual dispute is resolved, the dispute is no bar to summary judgment."). Once the moving party satisfies its burden, the burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When determining the merits of a summary judgment motion, "the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party." *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 622 (6th Cir. 2000); *see 2000*, *Multimedia, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). The Court must not weigh the evidence, but must decide whether there are genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. at 252. Although the disputed issue need not be "resolved conclusively in favor of the non-moving party," [the nonmoving party] "must present

6

significant probative evidence that makes it necessary to resolve the parties' different versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citation omitted).

## III.  ANALYSIS

### A.   LOCAL SCHOOL BOARDS ARE NOT ARM OF THE STATE FOR PURPOSES OF FEDERAL SOVEREIGN IMMUNITY ANALYSIS

The Eleventh Amendment prohibits federal courts from hearing damage suits against states and arms of the state that have not waived their immunity. *Tolliver v. Harlan County Bd. Educ.,* 887 F.Supp. 144, 147 (E.D.Ky. 1995). It does not, however, protect cities, counties or the state's political subdivisions. *Id.* The courts of this district have long held that local school boards are not an arm of the state and are sufficiently autonomous to fall outside the protection afforded by the Eleventh Amendment to the U.S. Constitution.  *Blackburn v. Floyd County Bd. of Educ.,* 749 F.Supp. 159, 162, (E.D.Ky. 1990); *see also Ghassomians v. Ashland Independent School Dist*., 55 F.Supp.2d 675, 682–83 (E.D.Ky. 1998) (citing *Blackburn,* 749 F.Supp. at 162; *Tolliver,* 887 F.Supp. at 147; *Creager v. Bd. of Educ.,* 914 F.Supp. 1457, 1461 (E.D.Ky. 1996); *Doe v. Knox County Bd. Educ.,* 918 F.Supp. 181, 183 (E.D.Ky. 1996)).  Nonetheless, Defendants raise the issue of whether the Board of Education of Scott County and, in turn, Defendant Blankenship are arms of the state and, thus, subject to sovereign

7

immunity.[3]

Defendants argue that it is time to revisit this issue in light of the decision of the Sixth Circuit Court of Appeals in *Gragg v. Ky. Cabinet for Workforce Development*, 289 F.3d 958 (6th Cir. 2002), and the decisions of the Kentucky Supreme Court in *Yanero v. Davis*, 65 S.W.3d 510 (2001), and *Williams v. Ky. Dept. of Educ.*, 113 S.W.3d 145 (Ky. 2003).  The Court is not persuaded. *Gragg* does not address the issue of sovereign immunity for local school boards.  *Yanero* and *Williams* are concerned with governmental immunity for local school boards under Kentucky state law, and state law sovereign immunity does not, alone, operate to preclude a federal civil rights complaint from being heard.  *Howlett v. Rose*, 496 U.S. 356, 376 (1990).

Defendants argue that, nonetheless, *Yanero* and *Williams* offer an "interpretation of the import of [the Kentucky Education Reform Act]" which would, in their eyes, stand the law of this district on its head.  That said, neither case suggests nor does the Court have any evidence that KERA's decentralization efforts – so meaningful in *Tolliver* – have been rolled back.  Already, this district has had multiple opportunities to consider the impact of KERA on its determination that local school boards are not arms of the state.

---

[3]     For the purpose of sovereign immunity analysis, "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003).

*See Ghassomians,* 55 F.Supp.2d at 682-83 (citing *Tolliver,* 887 F.Supp. at 147; *Doe,* 918 F.Supp. at 183) ("Defendant fails to realize . . . that Judge Bertlesman in 1995 and Judge Coffman in 1996 rejected this very argument [that KERA has expanded state control over education] after considering KERA's changes."). Defendants have not pointed to any evidence or change in the law which would merit a change in this Court's evaluation of the relative autonomy with which local school boards are vested in Kentucky or their lack of status as an arm of the state in the eyes of this Court.

There is no merit to Defendants' position that Defendant Scott County School Board and, by extension, Defendant Blankenship are arms of the state, subject to sovereign immunity under the Eleventh Amendment, and the Court shall consider Plaintiff's claim under 42 U.S.C. § 1983 accordingly. *See Blackburn,* 749 F.Supp. at 163 (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989)).

**B.   PLAINTIFF'S CLAIMS UNDER ADA, REHABILITATION ACT OF 1973, AND 42 U.S.C. § 1983 ARE NOT SUBJECT TO ADMINISTRATIVE EXHAUSTION REQUIREMENTS OF IDEA, 20 U.S.C. § 1415**

Defendants next argue that this Court lacks subject matter jurisdiction over Plaintiff's claims under the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983 because Plaintiff has failed to meet the administrative exhaustion requirements of the IDEA, 20 U.S.C. § 1415. Although she seeks "a declaration of her

9

rights and appropriate relief under IDEA" and complains that Defendants have not set in place a plan "to prov[ide B.M.] a free . . . appropriate and discriminatory [*sic*] free education" [Compl. at p. 2, first unnumbered paragraph, and at ¶ 20], Plaintiff argues that she is not required to exhaust administrative remedies in this instance because, by their nature, her claims lie outside of the purview of the IDEA.[4] For the reasons which follow, the Court agrees.

The IDEA seeks:

> ...to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living....[and]
>
> to ensure that the rights of children with disabilities and parents of such children are protected...

20 U.S.C. § 1400(d)(1)(A) & (B).

In order to achieve these goals, the IDEA prescribes certain procedural safeguards, including administrative hearings as provided for under state law. 20 U.S.C. § 1415(f). Only upon exhausting the available administrative process may a party who is dissatisfied with the outcome of those administrative proceedings

---

[4]   This language aside, Plaintiff's Complaint does not cite to the statutory provisions which comprise the IDEA, 20 U.S.C. § 1400, et seq., nor has she separately set forth a count seeking relief under the IDEA.

10

bring suit in state or federal court.  20 U.S.C. § 1415(i)(2); *see Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989).  The Act clarifies that:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [subchapter II of the IDEA], the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

Section 1415 requires the exhaustion of administrative remedies prescribed under the IDEA, even when the plaintiffs do not rely on the IDEA as the source of their claims, if their claim is sufficiently related to "free appropriate public education" to a disabled child under the IDEA.  *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 916 (6th Cir. 2000) (*citing N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2nd Cir. 1987); *Hayes Through Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 813-14 (10th Cir. 1989); *Franklin*, 7 F. Supp. 2d at 922, 925-26; *W.L.G. v. Houston County Bd. of Educ.*, 975 F.Supp. 1317, 1328 (M.D. Ala. 1997); *Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739 F.Supp. 361, 364-65 (W.D. Mich. 1990)).  As explained by the Seventh Circuit Court of

11

Appeals:

> [U]nder the IDEA, education professionals are
> supposed to have at least the first crack at
> formulating a plan to overcome the
> consequences of educational shortfalls.  That
> the educational problem has consequences
> outside school . . . can't be enough to avoid
> the statutory system.

*Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 992

(7th Cir. 1996).  That said, it is common sense that "a disabled

child who asserts a constitutional claim having some relationship

to education but no nexus to the IDEA is not required to pursue

administrative remedies under the IDEA before filing suit under §

1983. . ." or other applicable law.  *Franklin v. Frid*, 7 F.Supp.2d

920, 925 (W.D. Mich. 1998).

In determining whether relief is available under the IDEA (and

exhaustion required) where claims are brought pursuant to other

statutes, courts have looked to the nature of the wrongs alleged.

*See A.P. ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No.

11*, 538 F.Supp.2d 1125 (D. Minn. 2008) (no requirement of

exhaustion where § 504 claims for failure to accommodate diabetic

student's need for administration of insulin and testing of blood

sugar were not IDEA-type claims and related only tangentially to

his education); *Sullivan ex rel. Sullivan v. Vallejo City Unified

Sch. Dist.*, 731 F.Supp. 947 (E.D. Calif. 1990) (no requirement of

exhaustion under IDEA's predecessor prior to suit for relief under

Rehabilitation Act where disabled student sought to be accompanied

12

by service dog at school but did not dispute the adequacy of educational program or aver that service dog was educationally necessary); *Doe ex rel. Doe v. Belleville Public Sch. Dist.*, *No. 118*, 672 F.Supp. 342 (S.D. Ill. 1987) (no requirement of exhaustion under IDEA's predecessor prior to suit for relief under Rehabilitation Act where child diagnosed with AIDS and excluded from classroom did not allege that disability affected educational performance and was not in need of "special education" due to medical condition); *compare Eads ex rel. Eads v. Unified Sch. Dist. No. 289, Franklin County, Kan.*, 184 F.Supp.2d 1122, 1125 (D.Kan. 2002) (exhaustion of administrative remedies under IDEA required where diabetic student alleged that she was unable to perform adequately and forced to withdraw from public school because defendants failed to provide additional time to complete class assignments, denied access to homework assignments, ridiculed her because of her disability, and displayed open animosity towards her).

B.M.'s allegations arise from concerns about how blood sugar monitoring would be conducted and insulin administered while she was at school. Plaintiff does not allege that diabetes impacts her educational performance and that she, thus, requires specialized educational services. In other words, Plaintiff's claims are not related to the way that Defendants provided an education to B.M. Rather, she complains of constitutional and statutory violations

independent of the IDEA.  Accordingly, the Court finds Plaintiff's federal claims under the ADA, the Rehabilitation Act of 1973, and 42 U.S.C. § 1983, are not subject to the IDEA's requirement of exhaustion of administrative remedies, and the Court has subject matter jurisdiction to review those claims at this time.

### C.   PLAINTIFF'S CLAIMS FOR VIOLATION OF TITLE II OF THE ADA, § 504 OF THE REHABILITATION ACT, AND THE KENTUCKY CIVIL RIGHTS ACT FAIL

B.M. avers that Defendants violated Title II of the ADA, § 504 of the Rehabilitation Act, and the Kentucky Civil Rights Act (hereinafter, "KCRA").  She complains that Defendants improperly excluded her from participating in the educational process, i.e., denied her an "appropriate discriminatory [sic] free education," at SGES because Defendants failed to provide her with reasonable accommodations for testing her blood sugar levels and administering insulin, actions necessary because of her diabetic condition. Based on the evidence presented to the Court, Plaintiff's claims must fail for the reasons which follow.

Title II of the ADA, § 504 of the Rehabilitation Act, and the KCRA, under which Plaintiff brings her claims, all prohibit discrimination on the basis of disability.[5]  Title II of the ADA

---

[5]     B.M. states in passing in her Response that her claim arises out of Titles II and III of the ADA.  [Record No. 25 at 12.]  Title III of the ADA applies to private entities providing public accommodations, not to public entities. *See* 42 U.S.C. §§ 12181-82; *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.,* 64 F.3d 1026, 1036 (6th Cir. 1995).  Entities subject to Title III include private schools, but not public ones. *See* 42 U.S.C. §

provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subject to discrimination by such an entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

While the Rehabilitation Act and the ADA are not identical, the Sixth Circuit has held that "because the purpose, scope, and governing standards of the acts are largely the same, cases construing one statute are instructive in construing the other." *Doe v. Woodford Co. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000) (internal quotation marks omitted). Additionally, the language of the Kentucky Civil Rights Act, KRS 344.010, et seq., mirrors the language of both the ADA and the Rehabilitation Act and seeks to, among other things, "provide for execution within the state of the policies embodied in . . . the Americans with Disabilities act of 1990 . . . ." KRS 344.020(1)(a); *Brohm, M.D. v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998). Kentucky state courts

---

12181(7); 28 C.F.R. § 36.104.  As Plaintiff's complaints surround events at a public school, Title III does not apply to this case, and Plaintiff may not state a claim thereunder.

treat federal courts decisions regarding the ADA as persuasive authority, and federal courts have analyzed Kentucky Civil Rights Act claims using the same analysis as for claims arising under the ADA and Rehabilitation Act. *See Brohm*, 149 F.3d 517; *Williamson v. Lear Corp.*, Nos. 06-70654 and 05-73093, 2005 WL 3555920 (E.D.Mich. Dec. 28, 2005); *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589 (Ky. 2003); *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95 (Ky. Ct. App. 2000). Accordingly, this Court will apply the same analysis to the three claims involving violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and KRS § 344. *See Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705-06 (Ky. Ct. App. 2004).

Under the ADA, the Rehabilitation Act, and the KCRA, the elements are of a claim are essentially the same: (1) Plaintiff must be a person with a disability; (2) Plaintiff must be "otherwise qualified" for participation in the relevant program; and (3) Plaintiff must be excluded from participation in or denied the benefits of that program or otherwise subjected to discrimination by reason of his or her disability.[6] For the purposes of this Opinion, the Court assumes – without deciding – that Plaintiff is a person with a disability and is otherwise qualified for participation in the general educational program offered by Defendants. Thus, the Court is concerned with only two

---

[6]     Under the Rehabilitation Act, there is the additional requirement that the defendant must be an entity receiving federal funds. That element is uncontested here.

questions.   First, the Court must decide whether Defendants violated the laws against disability discrimination by failing to accommodate B.M.'s diabetes and, thus, excluding her from participation in denying her the benefits of the educational program at SGES or otherwise subjecting her to discrimination by reason of her diabetes.  If the answer to this question is "yes," the Court must determine whether Defendants acted with sufficiently culpable intent to support an award of damages.

A public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making modifications would fundamentally alter the nature of the service." 28 C.F.R. § 35.130(b)(7) (regulation promulgated with respect to ADA).   The accommodation must not "impose an undue hardship on the operation of [an entity's] program."   28 C.F.R. § 41.53 (regulation promulgated with respect to Rehabilitation Act).   The failure to provide reasonable accommodations can constitute disability discrimination. *See Alexander v. Choate,* 469 U.S. 287, 295 (1985); *Olmstead*, 527 U.S. at 601; *see also Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).

The obligation of an educational institution to make modifications in order to accommodate an individual with a disability does not require the institution to make "fundamental"

17

or "substantial" changes to its programs or standards. *Alexander,* 469 U.S. at 300. Nevertheless, "[t]he educational institution has a 'real obligation . . . to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation.'" *Wong v. Regents of Univ. of California*, 192 F.3d 807, 817 (9th Cir. 1999) (*quoting Wynne v. Tufts Univ. Sch. of Medicine*, 932 F.2d 19, 25-26 (1st Cir. 1991)). In the instant matter, for the reasons which follow, the Court finds that Defendants sought and provided suitable means of reasonably accommodating B.M.'s diabetes and have submitted a factual record indicating that it conscientiously carried out its obligation to do so.

Upon B.M.'s request for the services of a trained nurse at SGES, Defendants offered B.M. the option of attending a nearby elementary school with a nurse on staff, WES, so that she might receive the services requested. Defendants declined to station a nurse at SGES as a nurse was already resident at WES and in light of the additional cost burden that would be placed on the school system by employing an additional nurse at SGES. S.M. rejected a transfer to WES because she was concerned that B.M. would miss a substantial amount of instructional time on account of the travel time from her home to SGES, then SGES to WES on secondary

transportation.[7]

Defendants also considered S.M.'s request that they train SGES staff to monitor B.M.'s blood sugar and administer insulin as necessary but declined to do so because of potential liability under Kentucky regulations which could be construed as prohibiting non-medical personnel from administering injections. Defendants then offered several alternative accommodations, including permitting S.M., local emergency medical technicians, or a local nurse or physician to administer the insulin at the school or in nearby medical offices. S.M. rejected each of these proposed accommodations, in turn, as well.

Defendants initially offered B.M. an objectively reasonable solution in response to her request for nursing services – transfer to a school within the district (and only 5-7 miles from SGES) at which a school nurse was resident. S.M. declined that accommodation and insisted that services be provided to B.M. at SGES. "It is well-established, however, that there is no absolute right to attend a neighborhood school." *McLaughlin v. Holt Pub. Sch. Bd. of Educ.*, 320 F.3d 663, 670 (6th Cir. 2003) (construing IDEA) (citing *Murray ex rel. Murray v. Montrose County Sch. Dist.*, 51 F.3d 921, 928-29 (10th Cir. 1995) (IDEA regulations indicate

---

[7]    The Court notes that there is no evidence of the actual impact that such transportation would have on B.M.'s instructional time beyond the S.M.'s bare assertions that it might take 30 minutes in the morning and 30 minutes in the evening.

preference not mandate for neighborhood school unless IEP requires placement elsewhere); *Schuldt v. Mankato Indep. Sch. Dist. No. 77,* 937 F.2d 1357, 1361 (8th Cir. 1991) (IDEA did not require school districts to modify particular schools to accommodate disabled children already receiving appropriate public education in another facility); *Barnett ex rel. Barnett v. Fairfax County Sch. Bd.,* 927 F.2d 146, 153 (4th Cir. 1991) (requiring board to provide every hearing-impaired student with interpreter of choice at base school instead of at mainstreamed but centralized location constituted "substantial modification" not required under Rehabilitation Act)). The Court is not persuaded that either the ADA, § 504, or the KCRA require school districts to modify school programs in order to ensure neighborhood placements when necessary services *and* a free and appropriate education are available at another site within the district. *See Urban by Urban v. Jefferson County Sch. Dist. R-1,* 89 F.3d 720, 727-28 (10th Cir. 1996) (construing IDEA, ADA, and Rehabilitation Act) (citing *Southeastern Cmty. Coll. v. Davis,* 442 U.S. 397, 410-11 (1979); *Barnett,* 927 F.2d 146, 154-55; *Schuldt,* 937 F.2d at 1362-63). As Plaintiff has not averred that the educational program at WES is neither free nor appropriate, she cannot demonstrate that Defendants failed to accommodate her or discriminated against her on the basis of disability under the ADA, the Rehabilitation Act, or the KCRA.

Further, even if B.M. could demonstrate that Defendants failed

20

to offer her reasonable accommodations, she cannot demonstrate as a matter of law that Defendants acted with sufficiently culpable intent in the event that they did fail to reasonably accomodate B.M.'s diabetes.  In cases under the ADA or § 504 which do not involve challenges to educational services, courts have held that a plaintiff must show that the defendant acted with "deliberate indifference."[8]  *See Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001); *see also Anoka-Hennepin Independent School Dist*. No. 11, 538 F.Supp.2d 1125.

A defendant is deliberately indifferent only if he acts with "conscious disregard" for a plaintiff's rights." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.*  Such conscious disregard exists only if either (1) the defendant actually knows that its actions will violate the plaintiff's rights or (2) such a violation is the "plainly obvious consequence" of the defendant's actions. *See Peterson*, 538 F.Supp.2d at 1147 (*citing Brown*, 520 U.S. at 410).

In the instant matter, there is no evidence of record to demonstrate that Defendants were deliberately indifferent to B.M.'s

---

[8]     This is distinct from those cases involving the IDEA or challenges to a disabled child's education plan where courts have held that a "bad faith" or "gross misjudgment" standard should apply. *See Monahan v. Nebraska*, 687 F.2d 1164 (8th Cir. 1982); *Campbell v. Bd. of Ed. of Centerline Sch. Dist.*, 58 Fed.Appx. 162, 166-167 (6th Cir. 2003); *S.S. v. Eastern Kentucky Univ*., 431 F.Supp.2d 718 (E.D. Ky. 2006).

rights or that a violation was the obvious consequence of the School District's actions. The parties in this matter engaged in dialogue in an attempt to find a reasonable accommodation. For a variety of reasons, neither party would agree to the other parties' suggested accommodations and thus, a solution was not reached during the school year.

There is no evidence that S.M.'s suggestions were rejected out of indifference but were rejected because of the viable concerns for cost and liability. B.M. has not shown that the School District had actual knowledge that its refusal to hire a full-time nurse at SGES or train staff members to administer shots at SGES would violate B.M. rights, or that such a violation was a "plainly obvious consequence" of the School District's actions. Furthermore, although B.M. and her mother may have been offended by Blankenship's alleged statements regarding B.M.'s diabetes, they alone are insufficient to demonstrate that the School District's actions were made with deliberate indifference.

### D.   PLAINTIFF'S DUE PROCESS CLAIM ALSO FAILS

Plaintiff also seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment to the United States Constitution, stating that "[t]he Defendant has violated Plaintiff's civil rights by denying her an equal opportunity for an education without due process of law." [Complaint at ¶ 35.] The Fourteenth Amendment prohibits a state from depriving any person of

life, liberty, or property, without due process of law.  Plaintiffs
seeking to establish a procedural due process violation must show:
(1) that they have been deprived of a protected liberty or property
interest; and (2) that the available state procedures were
inadequate to compensate for the alleged deprivation. *See Collyer
v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).  As the Supreme Court
explained in *Zinermon v. Burch*, 494 U.S. 113, 126 (1990), "to
determine whether a constitutional violation has occurred, it is
necessary to ask what process the State provided, and whether it
was constitutionally adequate."  The Due Process Clause "grants the
aggrieved party the opportunity to present his case and have its
merits fairly judged." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422,
433 (1982).  That opportunity must take place at a "meaningful time
and in a meaningful manner." *Id*. at 437(*quoting Armstrong v. Manzo*,
380 U.S. 545, 552 (1965)).

The School District argues that B.M. failed to state a claim
upon which relief may be granted because she has no protected right
to a public education.  While education is not a fundamental right,
*see Plyler v. Doe*, 457 U.S. 202, 221-23 (1982), in some
circumstances a due process claim can be properly stated when a
student is deprived of a public education, i.e., barred from
attending school. *See Goss v. Lopez*, 419 U.S. 565 (1975)
(recognizing that "a student's legitimate entitlement to a public
education as a property interest which is protected by the Due

Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause"); *see also Long v. Board of Educ. of Jefferson County, Ky,* 121 F.Supp.2d 621, 628 (W.D.Ky. 2000)(stating that a student facing suspension from school has a property interest in a free public education).

However, the cases in which due process claims are proper involve very different factual scenarios than that presented here. Due process is properly alleged in education cases when the child is prohibited from attending school without receiving any sort of procedural due process. In B.M.'s case, though she alleges that she was forced to miss school on a number of days, there is no indication that the School District took any action to preclude B.M. from attending school or that she was precluded from taking advantage of any administrative remedies that may have been available to her in the process of determining an appropriate § 504 plan with regard to her disability. While B.M. may have a protected interest in her education, she cannot and has not demonstrated that the School District deprived her of a public education without due process and her claim must fail.

**E.   EQUAL EDUCATION OPPORTUNITIES ACT**

In her response, Plaintiff argues for a good faith extension of the Equal Education Opportunities Act which provides that no child shall be denied "equal educational opportunity on account of

24

his or her race, color, sex, or national origin . . . ."   20 U.S.C. § 1703; [*see* Record No. 25 at 22.]   Upon a review of her pleadings, the Court notes that Plaintiff never actually attempted to state a claim under this statute in her Complaint although she did attempt to invoke the Court's jurisdiction under 20 U.S.C. § 1706.   [*See* Record No. 1, Complaint, at p. 1, last unnumbered paragraph.]   She has made no effort to amend her complaint in this regard, an effort which would be futile, in any event, as the language of the statute clearly does not speak to denial of an equal educational opportunity on the basis of disability as alleged by Plaintiff.   To the extent that Plaintiff has averred wrongs under the Equal Educational Opportunities Act, 20 U.S.C. § 1701, et seq., her claims are not cognizable thereunder and shall be denied.

**IV. CONCLUSION**

For all of the reasons stated above, the Court is of the opinion that Plaintiff's claims against Defendants should be dismissed.

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment [Record No. 20] is **GRANTED**.

This the 29th day of August, 2008.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

25